UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| SANDRA S. STANFILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 3:17-cv-856-PPS |
| v. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

An ALJ denied Sandra Stanfill's application for Social Security disability benefits, and Stanfill now seeks review of that decision. Stanfill claims the ALJ made two main errors in denying her application. She argues that the ALJ insufficiently weighed two of her alleged impairments and that this error resulted in the ALJ finding that Stanfill had greater abilities than she actually possesses. Second, she says that the ALJ made a clear error in assessing her credibility concerning the effect of those impairments. Based upon a review of the parties' briefs, the ALJ's written decision, the hearing transcript and underlying record, I disagree with Stanfill and will affirm the ALJ's decision.

**Background**

Stanfill first applied for benefits on July 9, 2014. [A.R. 12.[1]] In her application, Stanfill alleged a series of impairments and medical conditions which she said rendered

---
[1] The Administrative Record (A.R.) in this case is found at Docket Entry # 7. Citations are to the page number in the lower left-hand corner of the A.R.

her disabled. Of these, the ALJ found that the underlying medical records supported a finding that Stanfill had the following severe impairments: neuropathy, fibromyalgia, status post cervical fusion, chronic pain syndrome, and obesity. [A.R. 14.] The ALJ addressed in detail how additional conditions that Stanfill testified about were not supported by the underlying medical records. Stanfill does not challenge these determinations on the basis that any of them should have been found to be severe impairments, but because they serve to support the ALJ's credibility determination, a review of them is in order.

Stanfill alleged hypoglycemia resulting in lightheadedness and dizziness, but according to the ALJ, "a diagnosis of hyperglycemia has not been recorded" and "no complaints of blood sugar drops have been noted during any visit with primary care physician D. Ebersole, M.D. through the most recent visit on June 20, 2016." [A.R. 14.] Similarly, while Stanfill had reported to an optometrist that she was borderline diabetic, the ALJ found that "the medical evidence is inconsistent with diabetes, borderline or otherwise." [*Id.* at 15.]

The ALJ next addressed Stanfill's testimony concerning irritable bowel syndrome ("IBS") which Stanfill said caused her daily symptoms of diarrhea which would impact her daily work activities. The ALJ noted, however, that Stanfill's medical records contained only one reference to IBS, a diagnosis by a Dr. Ebersole from December 1, 2015 which noted that Stanfill had IBS "without diarrhea" and that no treatment was prescribed. [A.R. 15.] Stanfill also testified that her eyesight "can be messed up" and

this affects her ability to read. [*Id.*] In a lengthy discussion of Stanfill's eyesight and corresponding treatment, the ALJ found no basis for a severe visual impairment, as Stanfill's eye pain was resolved via a prescription of Restasis for dry eyes, and Stanfill had not followed up with a prescription for bifocals. [*Id.* at 17.]

In addition, the ALJ reviewed Stanfill's alleged impairments stemming from allergies, elbow pain, hypertension, hypothyroidism, headaches, mild neurocognitive disorder, and anxiety, to find that Stanfill's testimony and the underlying medical records did not support a finding that such impairments were severe. [A.R. 17-18.][2] Thus, as discussed later in the written decision, the crux of the ALJ's decision was that while Stanfill had multiple severe impairments which were supported by objective medical evidence, there were numerous instances of apparent exaggerations and contradictions between what Stanfill testified to at the hearing and what was found in her underlying medical records. This applied to both severe and non-severe impairments. The ALJ found that "claimant's allegations are not supported by the objective medical evidence. In addition, she has alleged and reported unsubstantiated diagnoses, and it appears that she has not fully complied with recommendations that

---

[2] While they do not appear to have been claimed as severe impairments and so were not discussed in depth, elsewhere in the written decision, the ALJ noted several other instances in which Stanfill had made claims to medical providers which were uncorroborated. For example, during a consultative physical examination in October 2014 and during a visit with her optometrist in November 2015, she reported osteoarthritis "but there is no imaging in evidence to support this report, and a diagnosis in this regard has not been made." [A.R. 24.] Likewise, during his visit with her optometrist she reported suffering from lupus, but "no testing is in evidence to confirm lupus and no treatment in this regard is reflected." [*Id.*]

-3-

may decrease her reported pain symptoms, such as cognitive behavioral therapy and exercise. Despite the claimant's allegations of near complete debilitation at the time of the hearing, she advised Dr. Ebersole that she was using a personal trainer just six months prior. Overall, the evidence is inconsistent with the claimant's allegations[.]" [A.R. 25.] The contradiction between Stanfill's claims of "near complete debilitation" and inability to work or function independently in her daily life on the one hand, and what was contained within her underlying medical records, on the other, led the ALJ to discount Stanfill's credibility.

This credibility assessment informed the ALJ's calculation of Stanfill's Residual Function Capacity ("RFC"). In formulating the RFC, the ALJ determined that Stanfill has the capacity "to perform light work . . . except that the claimant can occasionally climb ramps and stairs, she can never climb ladders, ropes, or scaffolds, she can occasionally balance, stoop, kneel crouch, and crawl, and she should avoid concentrated exposure to wet, slippery, or uneven surfaces and hazards, such as unprotected heights and dangerous moving machinery." [A.R. 20.] In doing so, the ALJ looked askance at Stanfill's testimony and reiterated her findings concerning the impairments discussed above, finding that overall "[t]he claimant's testimony suggested an extreme loss of functioning that is not supported by the objective medical evidence." [*Id.* at 22.] In particular, the ALJ found that claims of an inability to stand or any feeling in her hands were contradicted by claims of "tennis elbow" which she reported to her physician was the result of doing "a lot of sanding" and painting, as well as her reporting working out,

including use of a personal trainer six months prior to the hearing before the ALJ. [*Id.*]

As for Stanfill's small fiber neuropathy and fibromyalgia, the ALJ recounted several of Stanfill's physician trips but noted that "the only reference related to 'fiber' neuropathy was during a February 27, 2009"visit which was seven years prior to the hearing before the ALJ. [A.R. 22.] And even that reference to fiber neuropathy was merely "suggestive" of small fiber neuropathy. [*Id.*] Indeed, an EMG performed two weeks later was normal and without evidence of neuropathy. [*Id.* at 23.]

The ALJ also discussed Stanfill's October 2014 consultative examination with Dr. Villareol in depth. Dr. Villareol's notes stated Stanfill was "in no 'painful distress,' she was alert and oriented, and recent and remote memory was preserved." Her posture was "straight" and she was able to walk toe to heel and able to move on and off the examination table, albeit "with difficulty." [A.R. 24.] Her knee strength and range of motion in her extremities were normal. And while range of motion in the cervical spine was decreased, Stanfill had full range of motion in her thoracic and lumbar spine. [*Id.*] The State Agency, upon its review, determined that Stanfill retained the capacity for a restricted range of light work activity, which was effectively what the ALJ determined.

Given this RFC determination, the ALJ considered whether Stanfill could perform her prior work experience. Stanfill previous worked as a school bus driver. The ALJ consulted the testimony of a Vocational Expert ("VE") who participated in Stanfill's hearing. The VE testified that while a school bus driver is defined as a "medium exertion" job in the Dictionary of Occupational Titles ("DOT"), Stanfill performed this

-5-

job at a light exertion level. [A.R. 25-26.] The VE was then posed a series of hypotheticals to determine whether someone with Stanfill's RFC could find sufficient employment. The VE determined that sufficient jobs existed in the national economy which Stanfill could perform. Specifically, the VE testified that Stanfill could be employed as a cashier, officer helper, or pricer. [*Id.* at 27.] Given these findings, the ALJ determined that Stanfill was not disabled and denied her application for benefits.

## Discussion

Before diving into the specifics of Stanfill's argument, let's start with some basics on what my role is in this process. It is not to determine from scratch whether Stanfill is disabled or whether she should receive benefits. Instead, my review of the ALJ's findings is deferential, to determine whether the ALJ applied the correct legal standards and whether the decision's factual determinations are supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). If substantial evidence supports the Commissioner's factual findings, they are conclusive. *Id.;* 42 U.S.C. §405(g).

Substantial evidence is a low bar. Long ago, the Supreme Court told us that "substantial evidence" means more than a "scintilla" of evidence, but less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Given this modest standard, the review is a light one. But, of course, it is not meaningless review; I cannot

"simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

With this basic primer on the standards governing my decision-making out of the way, it's time to address Stanfill's specific arguments. Although she makes the argument second, I will first address Stanfill's claim that the ALJ improperly assessed her credibility concerning her subjective complaints. As a starting point, it should be noted that "[a]n ALJ is in the best position to determine a witness's truthfulness and forthrightness" and as such, a reviewing court will not overturn a credibility determination unless it is "patently wrong." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). "This court will affirm a credibility determination as long as the ALJ gives specific reasons that are supported by the record for his finding." *Id.* In making such determinations, an ALJ first looks to see if there are medically determinable impairments that could reasonably be expected to produce symptoms, and then evaluate to what extent the intensity, persistence, and limiting effects of the symptoms limit a claimant's functioning. Here, the ALJ did just that, as recounted in the above RFC determination. [A.R. 20.] The ALJ determined that Stanfill's level of exertion, including "a lot of sanding," painting, and weight loss from working with a personal trainer, inconsistent with her claims of being unable to stand for any length of time without pain. [*Id.* at 22-23.] But beyond that inconsistency, the ALJ further noted how Stanfill's characterizations were inconsistent with the objective medical evidence provided by her doctors and testing. [*See id.* at 22-25.]

Stanfill argues that *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004) prohibits an ALJ from rejecting or limiting the weight given to a claimant's testimony concerning her impairments solely because that testimony is not fully supported by the claimant's underlying medical records. In essence, Stanfill argues that *Carradine* requires an ALJ to presumptively believe any statement made by a disability claimant unless they are definitively contradicted by objective medical records. This is an incorrect statement and an overreading of the Seventh Circuit's holding in *Carradine*. That case focused on subjective complaints of pain and how pain can be both psychological *and physical* in nature, and it is improper for an ALJ to reject complaints of pain only because they are unsupported by objective *physical* evidence. As the court explained, "[p]ain is always subjective in the sense of being experienced in the brain. The question whether the experience is more acute because of a psychiatric condition is different from the question whether the applicant is pretending to experience pain, or more pain than she actually feels. The pain is genuine in the first, the psychiatric case, though fabricated in the second." *Carradine*, 360 F.3d at 754–55. Here, the ALJ did not impermissibly discount Stanfill's claimed pain levels; instead the ALJ found numerous conditions and impairments alleged by Stanfill to be unsupported by her medical records and directly contradicted by her reported activities. [*See* A.R. 20-25.] That is a very different thing.

In sum, the ALJ did not error in discounting Stanfill's testimony concerning her "near complete debilitation" at the time of the hearing because of contradictions from her recent medical records. And to the extent Stanfill's argument focuses only on pain

and not the wider RFC determination, she makes no argument that her pain is "more acute because of a psychiatric condition" like the claimant in *Carrdine.*

Having analyzed the ALJ's credibility determination concerning Stanfill's testimony (which undergirds much of the analysis relating to RFC), I will turn now to her other argument. Stanfill's brief is not a model of clarity on this point, but her argument focuses on the ALJ's RFC determination in general and the corresponding findings concerning jobs based on that RFC. [DE 12 at 12-19.] First, Stanfill argues that the ALJ's finding that she could return to her work as a bus driver was not supported by substantial evidence. Second, and more broadly, Stanfill tells me that the ALJ's improper evaluation of her fiber neuropathy and fibromyalgia led to an improper RFC determination. Because the RFC determination itself comes first in the sequence of an ALJ's decision, I will address it before the job-specific argument.

Stanfill attacks the ALJ's RFC determination through a variety of means. One of them is to say that the ALJ impermissibly "played doctor" and that despite the fact Stanfill had been diagnosed with small fiber neuropathy, the ALJ simply did not believe that Stanfill actually had this affliction. [DE 12 at 13-14 ("The ALJ seemed to have determined Ms. Stanfill did not have small fiber neuropathy[.]").] Stanfill says that the ALJ made the same mistake when evaluating the effects of her fibromyalgia. [DE 12 at 17 ("The ALJ seems to determine that Ms. Stanfill does not have fibromyalgia[.]")] But Stanfill's assertions are directly at odds with the fact that the ALJ did specifically find (thus agreeing with Stanfill) that she suffered from both fibromyalgia and neuropathy

and that these impairments were severe. [A.R. 14.] So, to be clear, the ALJ did not refuse to accept the diagnoses or believe that Stanfill was faking these impairments. Instead, she accepted the diagnoses, but found that Stanfill's claims as to their effects on her daily living and ability to sustain gainful employment were not supported by the underlying medical evidence.

So what Stanfill is really challenging is that, in her view, the ALJ should have found that her impairments from these two diseases were worse than what the ALJ determined. This is because, according to Stanfill, fibromyalgia and small fiber could reasonably cause the symptoms she alleged. The problem is that Stanfill does not point out any uncontroverted evidence at odds with the ALJ's decision, any key piece of evidence or medical opinion which the ALJ ignored, or other impermissible action. Instead, Stanfill wants me to second-guess the ALJ and re-weigh the evidence in a manner that would result in a more limited RFC determination. But that is not something a reviewing court is permitted to do. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (holding that a reviewing court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general substitute our own judgment for that of the Commissioner") (citation omitted); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) ("When reviewing for substantial evidence, we do not displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.").

*Skinner* is instructive. There, the Seventh Circuit noted that while the claimant's "symptoms are reasonably related to her diagnoses of diabetes and hypertension . . . the existence of these diagnoses and symptoms does not mean that the ALJ was required to find that [the claimant] suffer disabling impairments. Contrary to any claim of severity, the ALJ concluded that at best [the claimant] had demonstrated nondisabling symptoms, and the record medical evidence established that those symptoms are largely controlled with proper medication and treatment." *Skinner*, 478 F.3d at 844-45. So too here. The ALJ reviewed Stanfill's symptoms resulting from her fibromyalgia, neuropathy and other impairments based on what was supported by the objective evidence and crafted an RFC which restricted Stanfill's activities to be consistent with those symptoms. [A.R. 24-25.] And because that determination was supported by substantial evidence, it was not done in error.

Finally, I will address Stanfill's claim that the ALJ erred in finding that she could return to work as a school bus driver because while that job is listed in the DOT has being of "medium exertion," Stanfill performed it at a light exertion level. This is Stanfill's strongest argument, but in the end it does not make a difference to the disposition of her case. That is because, even if the ALJ's finding that she could return to work as a school bus driver was in error, the ALJ further found, based upon the RFC and corresponding testimony of the VE, that Stanfill could perform three other jobs: cashier, officer helper and pricer. [A.R. 27.] Thus, a finding that she could perform her job as a school bus driver was at most harmless error. And harmless error is not a basis

to reverse an ALJ. *Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010). Stanfill does not challenge the determination regarding the other three jobs, except in that she challenges the entire RFC determination. And as recounted above, that RFC determination was made based upon substantial evidence and thus there is no basis to overturn it.

## Conclusion

For the foregoing reasons, the final decision of the Commissioner of Social Security denying plaintiff Sandra S. Stanfill's application for Social Security Disability Insurance Benefits is AFFIRMED.

SO ORDERED on March 13, 2019.

/s/ Philip P. Simon_____
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT